Good morning, Your Honor. My name is Olumide Obayemi, spelled O-B-A-Y-E-M-I. I shall take the first five minutes to address certain issues. I shall reserve the last five minutes to on the rebuttal regarding the issue of change circumstances. Your Honor, this case is about whether the cessation of hostilities between Eritrea and Ethiopia affects my client's claim for asylum, the petitioner. I shall leave that until after the government's argument. But taking that in mind, I would like the Court to note that if the Court should find today that the documents relied on by the immigration judge and the BIA do not amount to substantial evidence. Therefore, the fact that both the BIA and the immigration judge failed to find any evidence of adverse credibility against the petitioner means that they have forfeited that right. Therefore, based on the case of Ventura, V-E-N-T-U-R-A, and the presumed to approve past persecution and to be credible. Therefore, the only thing left for this Court, if at the end of the hearing today, if the Court should find that the documents relied on the Department of State's reports do not rebut the adverse credibility, do not rebut the well-founded fear of future persecution. Therefore, based on the case of Hoxa, H-O-X-H-A-3-1-9-F.3-D, 1179, 9th Circuit, 2003, this Court may remind this case to the Attorney General as to the exercise of his discretion to grant asylum. Let me ask you this. When did the alleged, when did the past persecution take place? 1991 and 1992, Your Honor. Okay. And the decision of the IJ was in 2002? Yes, Your Honor. And he came to this country when? One second, Your Honor. He came in 1995, September 28th, 1995. 1995. Yes. So if we accept what happened to him prior to 1995, in 1991, 92, as true, doesn't the question become whether there has been a rebuttal of the presumption, assuming that it amounts to persecution, whether there has been a rebuttal of the possibility of future persecution? Your Honor, the record in this case were closed at the time the immigration judge rendered his decision in 2002. Right. Yes. But he says that according to the State Department, the political party that he was a member of, that he claims he was persecuted by being a member, is operating fine, that they're participating in the government. Your Honor, may I refer the Court to page 252 of the administrative record? Yes. And on that page, it was shown that a member of the ADPO, the party which the petitioner belonged to, was shot to death at a funeral ceremony. And also at page 228, a person in similar circumstances as the petitioner died in the gill because of infection. And the authorities failed to release his body, his corpse, to the family. Your Honor. When was that? Your Honor, page 228, Your Honor. Your Honor, those facts, they stand unchallenged. Yes, Your Honor. It's on page 228, Your Honor. Yeah, but when did that happen? In 2000, December 9, 2000. Your Honor, I need to, I want to reserve five minutes for my report. Okay. I will go on with it, if you still want me to answer the question. But it happened on December 9, 2000. Your Honor, the report is part of the record. It's not just Exhibit 4. It happened in 2000. Those two incidents happened even after the explosion came here. Your Honor, we have substantial evidence of record that persistent violation of human rights based on the record in this court is still continuing in Ethiopia. Your Honor, if I refer the court to page 371 and 372, 44 page 362, over 50,000 soldiers were killed during the war. Secondly, over 150,000 children have been rendered homeless. It's on the record. It's on page 392. And even on page 578, it was said that humanitarian law is absent. It's missing in Eritrea. You may want to save it, as you said, for rebuttal because we're familiar with what's before us. Thank you, Your Honor. We'll hear from the government. Good morning, and may it please the Court. Jonathan Potter on behalf of the Attorney General. Nothing in the record would compel this Court to overturn the immigration judge's decision in this case. The Department of Homeland Security presented evidence in the former country reports that rebutted Hagos' claims in this case. If you want, can you go? Excuse me. Yes, Your Honor. Was there a finding of mass persecution in this case? Your Honor, it appears from the posture of this case that it was assumed almost that there was mass persecution. That's the record. If you look at page 177 and 187, the immigration judge says, I just want to hear about the future. I don't really want to go into the past except for just bare minimum details. I just want to hear about the future. So it appears that off the record they had discussed possibly him accepting the fact that there was mass persecution. So we don't... I'm sorry, Your Honor, go ahead. Did the immigration judge find that that presumption of future persecution was rebutted? Yes, Your Honor. Basically on the basis of the country reports and some of the testimony in this record. For example... Concede that there was past persecution? Your Honor, I think we have to concede in this case that from the posture of the case that there was past persecution, yes. So the question then is whether it was rebutted. And in this case, in six pages of analysis in the immigration judge's opinion, he noted why he believed that evidence had been rebutted. First of all, looking at what Hagel's claim... Did he ever make that conclusion? He never says rebutted, Your Honor, but it's clear from the record from this decision that he looked at it, and if you look at the posture of the case as well, that he looked at this evidence and said, you know, I don't really want to go into the past as much. I want to look into the future. Well, when you say the posture of the case, what do you mean? The posture of the case in 177 and 187, Your Honor, of the record. He, on the record, after discussions off the record, says I want you to focus on the future and on ethnicity in this case, not on past persecution. Give me, you know, some analysis, some testimony on that, but not... It looks like he accepted that. Well, did he ever invoke the presumption of likelihood of future persecution? He never said the word presumption, but we won't even quibble with that in this case. Well, I know you're not going to quibble with it, but isn't that important? Yes, it is, Your Honor, but even under the facts of this case, that presumption has been, you know, defeated in the evidence of record. Counsel, did the IG put the burden on the government or the applicant when making that determination? Your Honor, from the immigration judge's decision, it isn't clear, but it's clear from the record what he did was he said these are the reasons why I find there's no future persecution. He looked at the arrests in 1991 and 1992 and said those were rebutted by the 2000 and 2001 country reports. But he didn't use the word rebut, did he? No, Your Honor, I think he may have used other words. See, I think that's our problem is we can't tell whether he actually gave this petitioner the benefit of the presumption of the likelihood of future persecution. Your Honor, I think from this record you can tell, by the way he constructs his immigration judge's opinion, is that all he talks about is rebuttal evidence in this case. He really doesn't get into the past facts. He says some things I doubted. Some of his testimony wasn't really clear and not real persuasive. He would do the same thing if he had ignored the presumption. Yes, Your Honor, but he would also have gone through much more analysis in the beginning of his decision in why he believes there was past persecution. That analysis is not in this record, which indicates that, in fact, he had done that analysis of past persecution Why does that indicate he did the analysis? And why doesn't it indicate he didn't do any analysis? Well, once again, I go back to the record in 177-187 where he is making it clear that he has gotten to that point that there has been past persecution. He's accepting as true from the asylum application and from probably his personal experience with Ethiopian Eritrea that that is true. Then he's moving forward on to... Hello? Yes, Your Honor. On page 165 of the record, the immigration judge said during the record as a whole, the court concludes that the respondent has not established that it is more likely than not that he's going to be persecuted. Isn't that the wrong analysis? Your Honor, I think, once again, he's stepped forward and he's going to be persecuted in the future. He doesn't even address past persecution. But he said the respondent has not established it. If he applies the presumption, the burden would be on the government to produce the evidence that would support that finding. And, Your Honor, maybe he didn't use very precise language in this oral decision, but if you look at the record as a whole, the government, in fact, did rebut. And he goes through each one in detail and says, this is what causes me to decide that, in fact, this applicant is not deserving of asylum. Why didn't he address the cat claim? Your Honor, he addresses the cat claim in the fact that he denies the torture convention protection. And, interestingly enough, very little of this record indicates that there was even, besides the mere allegation I've been tortured, the petitioner in this case didn't even present evidence of torture. In the future, or even really in the past, except for the 1991 arrest where he claims he was in prison for 30 days but presented no other corroborating evidence. The immigration judge found that evidence not worth much weight. He didn't make an adverse credibility determination, in my opinion. He just said it isn't worth that much weight in this case. He gave it less weight than he would have other evidence. The immigration judge in this case presented the following rebuttal to the applicant's testimony and evidence in this case. First of all, the arrests of 1991 and 1992. The immigration judge cited the 2000 and 2001 country reports. And he noted opposition groups and Eritreans are no longer targeted in Ethiopia. One could conclude from this record that the problem is whether the finding, the conclusion that conditions have changed is an accurate conclusion. And the oral argument was going in that direction. He was trying to show us that certain things have happened which would say that what you've just said, that conditions have stabilized is just not accurate. Can you go to the examples that he cited? Yes, Your Honor, I can. He cited two examples, both from, I believe, the 2000 country report where an AAPO worker was shot and also somebody had been arrested and had apparently had tuberculosis and had been in prison and died in prison and his body wasn't released. Those are two instances. However, those two instances, that's the State Department. Following the report, things are improving. Those were just two instances. It's more likely than not, it's not evidence that there's probability this individual would be at all subject to persecution if returned to Ethiopia. In fact, the immigration judge noted and this goes to the AAPO, which is the organization that these people were members of. The immigration judge noted, first of all, that the father, who according to Hagos they've been unable to find and Hagos himself were not big members in this group. They were just members. And also, as the immigration judge noted the 2001 country reports said they're generally free and fair elections. That's in the 2000 report. And there's even a donor supportive fund for certain parties. I expect the government would have been happier if the record had been a little cleaner and clearer. Yes, Your Honor. Of course, the government would always like these decisions clearer. And when we review it, we have to look at what we find in this record. And when we review it, what we find there's no finding of past persecution. It sort of will concede maybe that there was past persecution. But we don't see the finding. Then we have certain presumptions and we don't see in this record that those presumptions were recognized. Now, you're saying, no, he didn't specifically state it but there's evidence in the record to say he must have considered it and he must have rebutted it. Your Honor, if you would look at this in the harmless error context, this would clearly be over that presumption. Now, we're not asking the Court necessarily to do that. We're supposed to review what was done. And if the analysis is not proper or we can't tell whether the analysis was proper, what are we supposed to do with it? Well, Your Honor, in most cases you're going to have to remand in that circumstance. In some cases, I believe the record in this case is one of those cases where it's a very strong record as far as factually for the Attorney General. He could have gone through all the right hoops. He could have said things better, Your Honor. From this record, it looks like he did look at the presumption because all he addresses is the Petitioner's evidence and then addresses why that no longer is valid. And that's exactly what you do when you rebut a presumption. But he didn't say rebut the presumption. So why don't you do it if you don't recognize the presumption? Well, Your Honor, in this case, if you didn't recognize the presumption, he wouldn't even have mentioned the evidence presented by the Petitioner. When you're just not recognizing the evidence by the Petitioner, you just mention, I just find this refuted by the 2000-2001 country reports. Okay. That is not the case in this circumstance. Based on the totality of this record, we ask that this Court dismiss this Petition for Review and affirm the decision of the Board of Immigration Appeals and the Immigration Judge. Thank you very much. I saw you struggling. We may have a problem with the positioning of your chair, and there's no problem to move to the other side if you want a clearer... It's over now. In this case, we have past persecution at pages 186 to 187, page 294 and page 295 and 300 to 309. The record shows, though, that it will cause you some concern, I assume, the timing of what happened to him and the dates of the problems that he complains about as past persecution and then the delay between that and the time he found his way out of the country and here. Does that pose any problem for you in your view? Your Honor, just before I answer that question, I want to refer the Court to page 352 of the administrative record. We have a statement by the Ethiopian Prime Minister. The Prime Minister, he says that... Actually, by the... According to the Defense Ministry of Ethiopia, page 352, they refuse to withdraw their troops from inside Eritrea until the Eritrean government honors its own redeployment commitment. According to the Defense Ministry, withdrawal of the Ethiopian forces will be delayed indefinitely. The main cause of the problem in the home of Africa is because of the impasse, the problem between... The basis of the torture that was meted to the petitioner is based on the conflict between Ethiopia and Eritrea. If the Defense Ministry, the authoritative agency in Ethiopia, says that it will not honor that agreement, that makes obvious that the genesis of the problem will continue to persist forever. Whether it happened in 2002, whether it happened in 2005, we have a recalcitrant government that believes that it will not honor humanitarian law. That was the basis of the torture meted to the petitioner and his family. As long as that continues, the problem that we have will continue. In our brief, we have cited so many cases that substantiate that change in government or decrease in violations of human rights do not revolt the evidence of well-founded fear of future persecution. We have made it clear in our brief that the agency that is mandated to decide on the issue of asylum is the Attorney General and not the Department of State. The documents issued by the Department of State are based on the leadings of the Department of State. For example, it could be that Ethiopia was a friendly nation to America at that time in opposing certain issues in the honor of Africa. That may be the basis of that favorable Department of State report, but the main authority that is charged with determining improvement in human rights is the Department of Justice and not the Department of State. Based on that, the court should not assign any substantial weight to those two documents that were relied on by the immigration judge. Therefore, we believe that the petition must be allowed and based on the cases of Oga and Ali the court should find past persecution because the government has itself considered there was past persecution in this case. There is no need to try the case again. Thank you, Your Honor.
judges: Schroeder, Farris, Rawlinson